WATSON ET AL., APPELLANTS, *v.* DOOLITTLE, CLERK, APPELLEE.

[Cite as Watson v. Doolittle, 10 Ohio App. 2d 143.]

(No. 361—Decided May 17, 1967.)

*Messrs. Weaner, Hutchinson & Zimmerman,* for appellants.
*Messrs. Newcomer & Shaffer,* for appellee.

STRAUB, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Williams County, Ohio.

The annexation of certain territory to the village of Pioneer, Ohio, was initiated by the filing of a petition with the Board of County Commissioners of Williams County, Ohio. There was full compliance with all the provisions of Sections 709.02 and 709.03, Revised Code, and after hearing and upon consideration of the application, the Board of County Commissioners entered an order that the annexation should proceed and the transcript of the Board of County Commissioners was deposited with the Clerk of the village of Pioneer.

Under the provisions of Section 709.07, Revised Code, the plaintiffs-appellants, jointly with several other parties, filed this cause in the Common Pleas Court of Williams County, praying that an injunction issue to restrain the defendant-appellee, Clerk of the village of Pioneer, from reporting the transcript of annexation to the Council of the village of Pioneer. After trial of the cause, the Court of Common Pleas of Williams County denied the prayer of plaintiffs for such injunction.

The plaintiffs herein are: Lester E. Rupp, who is a purchaser on land contract of a portion of the territory to be annexed, and Forrest H. Yoder, a resident of the village of Pioneer, who also is the owner of property in such village. Defendant presented no issue in the Common Pleas Court as to the right of the two plaintiffs as real parties in interest to join as plaintiffs in the action below. Further, the defendant did not file any assignments of error in this court as provided under Section 2505.22, Revised Code, on the issue of whether or not the plaintiffs were real parties in interest. The defendant in the brief filed in this court first presented the issue as to whether or not plaintiffs are real parties in interest. Section 709.07, Revised Code, provides that "any person interested" may file a petition to restrain an annexation.

Section 707.11, Revised Code, dealing with injunctions to stop incorporation of villages, provides that "any person interested" may file a petition to enjoin such incorporation. On this issue as to the construction of the words, "any person interested," it was held in *Lockland (City)* v. *Shaver,* 59 Ohio Law Abs. 600, that the word "interested" means that some legal right, title, or interest of a resident of the territory sought to be incorporated, or of the part of the township remaining after such proposed incorporation, will be adversely affected by the

incorporation. *Hall* v. *Siegrist, Recorder*, 13 O. D. (N. P) 46, holds that under Section 707.11, Revised Code, in order to maintain the action for injunction, it is not necessary that the plaintiff have a direct pecuniary interest in the property located within the limits of the proposed incorporation. It is the holding of this court that the two plaintiffs, Rupp and Yoder, are such persons interested under Section 709.07, Revised Code, and are proper parties hereto.

Pioneer is an incorporated village in northern Ohio and the village limits extend on the east and west sides of State Route No. 15, a highway which runs north and south. Pioneer has a population of approximately 900 people and the area comprising the present village limits is approximately 440 acres, of which approximately 160 acres thereof is farmland or undeveloped.

The territory proposed to be annexed to Pioneer comprises approximately 1,100 acres. The boundary limits of the territory proposed to be annexed are extremely irregular in shape and size. For purposes of clarity in this opinion, the proposed territory for annexation will be divided roughly into three areas.

Area No. 1 adjoins and has a common boundary with the south and east village limits of Pioneer and is located on the east side of State Route No. 15. This area extends east of Route No. 15 approximately one mile and extends south of the present village limits approximately one-half mile, terminating at U. S. Route No. 20. Area No. 1 comprises approximately one-third of the territory sought to be annexed.

Area No. 2 is a narrow strip of land approximately 200 feet in width, extending south from U. S. Route No. 20 along the east side of State Route No. 15 for approximately two and one-half miles.

Area No. 3 connects with the south end of the strip, Area No. 2, on the east side of State Route No. 15, extending eastward approximately one mile, and extending to the south approximately one and one-half miles. Area No. 3 comprises approximately two-thirds of the total territory sought to be annexed. This Area No. 3 lies both north and south of the Ohio Turnpike. An entrance and exit gate to the Ohio Turnpike at the intersection of State Route No. 15 is located within this area.

Hereafter in this opinion Area No. 3 will be referred to as the Turnpike Area.

The first assignment of error filed by the plaintiffs is that the territory sought to be annexed is not adjacent to the village of Pioneer. The ground for this contention is that the Turnpike Area comprising approximately two-thirds of the territory sought to be annexed is located approximately three miles from the present village limits and is joined or connected to the area adjacent to the village on the south by a narrow connecting strip of land approximately two and one-half miles long and only 200 feet in width. This issue, therefore, involves the construction of the state statutes dealing with annexation.

The case of *Shugars, Clerk*, v. *Williams*, 50 Ohio St. 297, holds that in a case involving annexation of territory, the legislative intent should be determined by a consideration of all the statutes bearing upon the creation of villages and the annexation thereto.

In our case the annexation was initiated by the residents of the proposed territory to be annexed. Section 709.02, Revised Code, in so far as is applicable, reads as follows:

"The inhabitants residing on territory adjacent to a municipal corporation may, at their option, cause such territory to be annexed thereto, * * *."

Construing this section, the territory to be annexed thereunder should be restricted to "territory adjacent to a municipal corporation." Section 709.13, Revised Code, is as follows:

"The inhabitants, generally, of a municipal corporation may enlarge the limits of such municipal corporation by the annexation of contiguous territory in the manner provided by Sections 709.14 to 709.21, inclusive, of the Revised Code."

Section 709.14, Revised Code, reads, in part, as follows:

"The legislative authority of a municipal corporation which proposes to annex contiguous territory shall, * * *."

Section 709.22, Revised Code, reads, in part, as follows:

"Territory of a municipal corporation may be annexed to that of a contiguous municipal corporation * * *."

Section 709.23, Revised Code, reads, in part, as follows:

"The legislative authority of any municipal corporation may propose annexation of its territory to that of any contiguous municipal corporation, * * *."

Under these four sections, the territory to be annexed should be restricted to "contiguous territory."

Section 709.35, Revised Code, reads, in part, as follows:

"When a city and a village adjoin each other, and the inhabitants of territory constituting any part of such village desire to be annexed to such adjoining city, * * *."

Under this section the territory sought to be annexed should be restricted to "adjoined to or adjoining to." Sections 707.01, 707.02, and 707.03, Revised Code, provide for the incorporation of villages, the qualifications essential thereto, and for application for incorporation.

Section 707.04, Revised Code, reads, in part, as follows:

"The petition required by Section 707.03 of the Revised Code shall contain:

"(A) An accurate description of the territory embraced within the proposed municipal corporation, and it may contain adjacent territory not laid off into lots;

"* * *"

Reviewing all the aforementioned sections, it is apparent that the words, "adjacent," "contiguous" and "adjoining," were intended by the Legislature to be synonymous. It is presumed that the Legislature uses words and language in statutes that advisedly and intelligently express the intent of the Legislature. Therefore, when the words, "adjacent," "contiguous" and "adjoining," are used to designate what territory is subject to be annexed to a municipal corporation, the legislative intent is just what those words indicate or signify. Further, words used by the Legislature in a statute must be given their common, ordinary and accepted meaning. Other synonyms of the three words aforementioned are, next to, immediate, abutting, neighboring, bordering, conterminous, in conjunction with, and end-to-end.

It is practically conceded by counsel for the defendant, both in the brief filed and in the oral arguments to this court, that the main object and purpose of the proposed annexation is to annex the large Turnpike Area. We quote as follows from the brief of defendant:

"Part of the area to be annexed is presently being farmed, but testimony indicated that a better use would be for an *industrial development complex*. Most of the property in the area

148

immediately surrounding the Ohio Turnpike is presently owned by large corporations, and this property is being held for industrial development. Several tracts of land immediately adjacent to, and south of, the Village of Pioneer have been under option for industrial development but the options have lapsed as the result of the lack of utilities.

"The area sought to be annexed has not been utilized to its full potential because of the lack of water and sewage utilities. Existing governmental agencies have been unwilling or unable to provide these utilities. It was after preliminary planning that the Petition for annexation was filed.

"The proposed industrial complex is not an idle thought or whim but involves substantial real planning. A great deal of thought has gone into an *orderly development of an industrial area which is some distance from the residential area of the Village of Pioneer.*

"Village officials have given real consideration to this problem. The testimony indicated that the Council would be unwilling to proceed unless it *is economically feasible and possible to provide utilities to any new industries which may be brought into the area.*" (Emphasis added.)

This court recognizes that the industrial development of the Turnpike Area sought to be annexed might be of great economic benefit to the village and the surrounding community. While the proposed annexation of this Turnpike Area might be desirable or even justified on these economic factors, the issue before this court to determine is the legality of the proposed annexation of this Turnpike Area. Does this proposed annexation of the Turnpike Area, connected as it is to the area adjacent to the village by means of a narrow strip of land approximately two and one-half miles in length, comply with the annexation statutes of Ohio?

We are unable to find any decisions in Ohio on the issue involved. However, there are numerous authorities dealing directly with the question involved in many other jurisdictions where the annexation statutes are similar to those of Ohio. In those cases, such attempted annexations by means of connecting strips have been characterized by the courts as attempts to circumvent the annexation laws requiring annexed property to be adjacent and contiguous. The courts, in the authorities on this

subject, have referred to such attempted annexation as strip, shoestring, subterfuge, corridor, and gerrymander annexations.

Our considered conclusion is that this proposed annexation of the Turnpike Area, comprising approximately two-thirds of the territory sought to be annexed, an area approximately twice the size of the present village, and located approximately three miles from the present village, is not such an annexation as is contemplated under the statutes of this state. This proposed annexation, by connecting this large Turnpike Area by means of a long, narrow strip of land, is in disregard of and contravenes the provisions of the statutes requiring that territory to be annexed be "adjacent, contiguous, and adjoining." The rule is generally accepted in all jurisdictions having similar statutory limitations that a proposed annexation of a non-contiguous area by means of a connecting strip does not comply with the legislative intent requiring adjacent annexations. That this has been the well-established rule for many years is indicated by the following from 19 Ruling Case Law 734, under the caption "Requirement of Contiguity":

"40. Requirement of Contiguity.—The legislature, unless restrained by the constitution, may provide for the consolidation of cities without regard to the distance between them, absorbing in their consolidation all the intervening space, whether occupied by boroughs or townships. But such legislation is not conceivable, for the common sense of the people would not tolerate it. Even less desirable is the annexation of land to a municipality which is not contiguous thereto, but is separated by land constituting some other territorial unit. The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separate or segregation. The statutes which permit municipal corporations to annex territory without special legislative authority in each case always require that the territory so annexed be contiguous; and when the annexation is left in

the discretion of a judicial tribunal contiguity will be required as a matter of law.''

All the authorities cited in the brief of plaintiffs are in point and several are included herein as follows:

37 American Jurisprudence, Cumulative Supp., 1966, page 38:

''Attempts to annex outlying territory to a municipality by the device of a connecting, narrow, shoestring strip of land are looked upon with disfavor by the courts.''

37 American Jurisprudence 644, Section 27:

''The legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.''

The very recent case of *Town of Mount Pleasant* v. *City of Racine* (1964), 24 Wis. 2d 41, 46, 127 N. W. 2d 757, holds as follows:

''Shoestring or gerrymander annexation is not a rare phenomenon. The tendency of subdividers to reach far out into the countryside for vacant land, and their desire to attach it to the city of services, is natural; however, this can lead to annexations which in reality are no more than isolated areas connected by means of a technical strip a few feet wide. Such a result does not coincide with legislative intent, and tends to create crazyquilt boundaries which are difficult for both city and town to administer.''

The same rule was followed in the year 1964 in *Ridings* v. *City of Owensboro* (Ky.), 383 S. W. 2d 510. Other citations by plaintiffs which are in point are *Clark* v. *Holt* (1951), 218 Ark. 504, 237 S. W. 2d 483; *Potvin* v. *Village of Chubbuck* (1955), 76 Idaho 453, 284 P. 2d 414; *State, ex rel. Danielson,* v. *Village of Mound* (1951), 234 Minn. 531, 48 N. W. 2d 855.

A case directly in point is *Village of Morgan Park* v. *City of Chicago*, 255 Ill. 190, 99 N. E. 388. In that case the court was

construing the restrictions in the Illinois statute which provided "contiguous to city, town, or village." The court held in that case that the meaning of this phrase must be determined by the object sought to be accomplished by the statute. The opinion in that case also refers to four earlier decisions of Illinois directly in point: *City of Galesburg* v. *Hawkinson*, 75 Ill. 152; *People, ex rel. Sackmann,* v. *Keechler,* 194 Ill. 235, 62 N. E. 25; *Wild* v. *People, ex rel. Stephens,* 227 Ill. 556, 81 N. E. 707; *People, ex rel. Quisenberry,* v. *Ellis,* 253 Ill. 369, 97 N. E. 697.

Our determination from a review of these authorities is that the first assignment of error alleged by the plaintiffs is well taken. We find that the area surrounding the Ohio Turnpike, composed of approximately two-thirds of the territory sought to be annexed, is an area not adjacent to, nor is it contiguous or adjoining to, the village of Pioneer. The proposed annexation of this Turnpike Area by means of a long narrow connecting strip fails to fulfill the requirements of the annexation statutes with reference to territory being "adjacent, contiguous, or adjoining."

Our decision on the first assignment of error is dispositive of this entire matter and it is unnecessary and futile for the court to make findings on the remaining assignments of error.

The undisputed facts in this case under the statutes of Ohio entitle the plaintiffs to the injunctive relief prayed for in their petition. The judgment of the Common Pleas Court of Williams County is reversed at costs of defendant, and this court hereby renders the judgment the Common Pleas Court should have rendered, permanently enjoining the defendant, the Clerk of the village of Pioneer, from reporting the annexation transcript to the Council of the village of Pioneer, and the cause is remanded to the Common Pleas Court for execution for costs.

*Judgment reversed.*

SMITH, P. J., and BROWN, J., concur.