OPINION
Defendants-appellants Delaware Township and Liberty Township Boards of Trustees appeal from the April 13, 1999, Final Judgment of the Delaware County Court of Common Pleas granting plaintiff-appellees' petition for annexation to the City of Delaware. Plaintiffs-appellees are Harrison W. Smith, Jr., Agent, and Annexation Petitioners.
 STATEMENT OF THE FACTS AND CASE
On or about January 30, 1998, appellee Harrison W. Smith, Jr., as agent for the appellees in this case, filed a petition for annexation of 421.79+ acres in Delaware and Liberty Townships to the City of Delaware. All of the land sought to be annexed is located in Delaware County. Out of 42 property owners in the annexation area, 26, or approximately 62%, signed the petition for annexation whereas 16, or 38%, either did not sign the annexation petition or withdrew their names from the same. The 26 property owners who signed the annexation petition hold 81.5% of the total annexing territory. In addition, via testimony and affidavits, the owner of a corporation that owns 44.4 acres in the annexation territory indicated that his company remained neutral on the issue of annexation. Thus, owners representing approximately 92% of the annexation territory either favored annexation or remained neutral on such issue. The territory sought to be annexed is a long strip of land running south from the City of Delaware along U.S. Route 23, a major north — south artery between Columbus and Delaware. The annexation territory runs along U.S. Route 23 for approximately 2 miles and is surrounded on three sides by Delaware and Liberty Townships. Lengthy public hearings were held on the annexation petition over a period of six evenings, commencing on April 20, 1998, and ending on September 8, 1998. Both proponents and opponents to the annexation petition presented evidence via affidavits and live testimony. Of the 16 property owners opposing annexation, only 6 testified against annexation either in person or by affidavit. The proponents' primary reason for favoring annexation is to obtain access to central municipal sewer service. The opponents in turn, do not favor annexation for a multitude of reasons. The opponents testified that they were satisfied with the services provided by Delaware and Liberty Townships and with their septic systems. The opponents also questioned whether the City of Delaware could provide equivalent or better services than the two townships. Several property owners testified that they opposed the annexation since they did not want their children to attend school in a different school district and/or they did not want to pay income tax to the City of Delaware. Appellants Delaware and Liberty Township Boards of Trustees also opposed annexation citing, in part, the potential for confusion in the coordination and delivery of fire, emergency, and road services. Testimony and/or affidavits were presented from township trustees, a township zoning official, township fire chiefs as well as township residents as to the adequacy of township services, including fire, police, planning, zoning, park and road services. For example, both John Walkup, the Liberty Township Road Superintendent, and Donald Ward, the Delaware Township Road Superintendent, stated in their respective affidavits, that "the City of Delaware cannot provide comparatively better services than" either Liberty or Delaware Townships can. Both appellants and opponents of the proposed annexation also voiced concerns that the annexation would change the rural atmosphere of Delaware and Liberty Townships as well as have a negative effect on each townships' tax base. On September 15, 1998, Resolution 98-733 was unanimously adopted by the Delaware County Board of Commissioners denying appellees' petition to annex approximately 421.79 acres of Liberty and Delaware Township lands in Delaware County to the City of Delaware. The Delaware County Commissioners found that the annexation territory was unreasonably large and was not "adjacent" to the annexing city, the City of Delaware, and that annexation would not serve the general good of the territory sought to be annexed. The Commissioners further found that the City of Delaware did not have the ability to provide essential municipal services to the area sought to be annexed in the foreseeable future and that both Liberty and Delaware Townships could provide superior fire, police, road and other governmental services to the area. At the final hearing, the Delaware County Commissioners explained on the record their reasons for denying the annexation petition. Appellees, pursuant to R.C. 2506, appealed the decision of the Delaware County Board of Commissioners to the Delaware County Court of Common Pleas on October 5, 1998. Pursuant to an order filed on February 8, 1999, the trial court denied appellees' January 10, 1999, Motion to Submit Additional Evidence pursuant to R.C. 2506.03. Thereafter, both parties filed briefs. Pursuant to an Opinion filed on April 13, 1999, the trial court reversed the decision of the Delaware County Commissioners and granted appellees' petition for annexation. The trial court, in its April 13, 1999, decision, stated as follows: "After carefully reviewing all the evidence, this Court concludes that the Commissioners' findings are unsupported by a preponderance of the substantial, reliable and probative evidence; that the Commissioners abused their limited discretion in making those factual findings; and that the preponderance of the substantial, reliable and probative evidence required the Commissioners to grant the annexation petition."
A Final Judgment was filed by the trial court on the same day. It is from the April 13, 1999, Judgment Entry that appellants prosecute their appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO CONCLUDE THAT THE TERRITORY SOUGHT TO BE ANNEXED WAS NOT SUFFICIENTLY ADJACENT TO THE CITY OF DELAWARE TO COMPLY WITH OHIO ANNEXATION LAW WHEN ONLY 2.77% OF THE PERIMETER DISTANCE OF THE TERRITORY ACTUALLY TOUCHES THE CITY AND THE REMAINDER OF THE TERRITORY FORMS AN IRREGULAR, JAGGED PENINSULA EXTENDING APPROXIMATELY TWO MILES AWAY FROM THE CITY INTO THE UNINCORPORATED AREA.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO FIND THAT THE TERRITORY WAS UNREASONABLY LARGE WHEN THE SHAPE AND CONFIGURATION OF THE TERRITORY IS A LONG, NARROW, IRREGULAR PENINSULA OF LAND EXTENDING OUTWARD FROM THE CITY OF DELAWARE FOR APPROXIMATELY TWO MILES THAT DOES NOT SHARE A COMMUNITY OF INTEREST WITH THE CITY AND, IF ANNEXED, WOULD DISRUPT THE COORDINATION AND PROVISION OF BOTH CITY AND TOWNSHIP SERVICES TO THE AREA, HINDER ORDERLY MUNICIPAL GROWTH AND FRUSTRATE THE CONCEPT OF MUNICIPAL UNITY.
 III. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THE GENERAL GOOD OF THE TERRITORY WOULD BE SERVED BY ANNEXATION WHEN THE EVIDENCE SHOWED THE TERRITORY WOULD LOSE SIGNIFICANT BENEFITS IF IT WERE ANNEXED AND A NUMBER OF PROPERTY OWNERS IN THE AREA WOULD NOT BE BENEFITTED BY THE ANNEXATION.
Our standard of reviewing annexation appeals was stated by the Ohio Supreme Court in Kisil v. City of Sandusky (1984), 12 Ohio St.3d 30,34. According to Kisil, R.C. 2506.04 requires a court of appeals to affirm the common pleas court unless we find, as a matter of law, the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence. See also Smith v. Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608. We must assume the court of common pleas weighed all the evidence presented, Dudukovich v. Lorain Metro. Housing Authority (1979), 58 Ohio St.2d 202, 206.
 I
Appellants, in their first assignment of error, contend that the trial court erred as a matter of law when it concluded that the territory sought to be annexed was sufficiently adjacent to the City of Delaware. The trial court, in so concluding, stated as follows in its April 13, 1999, Opinion: "The 421.79 acres involved in this annexation are located along approximately two miles of the Eastern edge of U.S. Highway 23, with continuous frontage on that roadway as it proceeds South from Delaware toward Columbus. At the territory's juncture with the city's current boundary, the annexing territory and the city share a 1085 feet (0.2 mile) border. Thus, the territory runs along that heavily traveled thoroughfare with its length roughly ten times its width, though its width varies significantly where the tracts fronting on Highway 23 extend back less or further to the East. At two points the plots extend back from Route 23 as much as 2,933 feet and 2,413 feet. At its narrowest dimension, approximately one mile South of its common boundary with the city, the lot fronting on Highway 23 extends back only 400 feet.
Nothing about this territory's size, its configuration, or the length of its common border with the city prevents its annexation."
The annexation of an adjacent territory by a municipality is to be encouraged. Smith v. Granville Twp. Bd of Trustees (1998),81 Ohio St.3d 608. R.C. 709.02 specifically states "[t]he owners of real estate adjacent to a municipal corporation may, at their option, cause such territory to be annexed thereto, in the manner provided by sections 709.03 to 709.11 of the Revised Code." In City of Middletown v. McGee (1988), 39 Ohio St.3d 284, 287, the Supreme Court of Ohio elaborated on the meaning of "adjacent" as used in R.C. 709.02 as follows: "The terms `adjacent,' `contiguous' and `adjoining' are all used by the Revised Code statutes governing annexation. See R.C. 709.02, 709.13 through 709.16; 709.18; 709.22 through 709.24. These terms are not defined by the Revised Code, but are generally understood to be synonymous in Ohio and in other jurisdictions. See Watson v. Doolittle (1967), 10 Ohio App.2d 143,147, 39 O.O.2d 267, 270, 226 N.E.2d 771, 774; Annotation, What Land is Contiguous or Adjacent to Municipality so as to be Subject to Annexation (1973), 49 A.L.R.3d 589, 598 Section 3[a]. While it is generally agreed that some touching of the municipality and the territory to be annexed is required, the law is unsettled as to what degree of touch is needed to fulfill the contiguity requirement. See Annotation, supra, at 600, Section 3[b].
"In Ohio, courts have frowned upon the use of connecting strips of land to meet the contiguity requirement when annexing outlying territory not otherwise connected to the annexing municipality. Such annexations are usually referred to as "strip, shoestring, subterfuge, corridor, and gerrymander annexations." Watson v. Doolittle, supra, at 148-149, 39 O.O.2d at 270, 226 N.E.2d at 775. See, also, Stressenger v. Bd. of Cty. Commrs. (1971), 28 Ohio App.2d 124, 57 O.O.2d 193, 276 N.E.2d 265. But, see, Bd. of Twp. Trustees v. Horn (1981), 2 Ohio App.3d 170, 2 OBR 186,441 N.E.2d 628. In determining whether a proposed annexation satisfies the contiguity requirement, these courts as well as the courts of other jurisdictions, have noted that the basic concept of a municipality is that of a unified body, and have consistently inquired whether an annexing municipality would conform to this concept if a proposed annexation were to take place."
As is stated above, with respect to the requirement of adjacency, the trial court, in its April 13, 1999, Decision, stated that "[a]t the [annexing] territory's juncture with the city's current boundary, the annexing territory and the city [of Delaware] share a 1,085 feet (0.2 mile) border." While appellants also point out that only approximately 1,085 feet out of the territory's total perimeter distance of 39,117.87 feet (or 2.77%) "are actually contiguous with the city," we agree with appellees that "[t]he percentage of feet out of the total amount of linear feet that actually touches a territory is . . . not the test to determine whether a property is contiguous to a municipality." In Re: Petition for Annexation of 75.14 Acres of Land by Thomas H. Wiechel v. Board of Trustees, Tate Township (Sept. 16, 1996), Clermont App. No. CA96-02-013, unreported at 9. The 1,085 feet that the annexing territory and the City of Delaware share is located along the southeast corner of the City of Delaware and represents the entire northern border of the territory sought to be annexed. The portion of the territory sought to be annexed that touches the City of Delaware's current boundary is neither a shoestring nor a corridor since connecting strips of land are not being used to meet the contiguity requirement. Nor does such territory have a "balloon-on-a-string" configuration. Moreover, the proposed annexation by the City of Delaware does not violate the concept of municipal unity and is not, therefore, unlawful. In Watson v. Doolittle, the court expressed the concept of a municipality as a unified body as follows: "` . . . The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants-that is, a body of people collected or gathered together in one mass, not separated into distinct masses; and having a community of interest because [they are] residents of the same place, not different places. So, as territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separate [sic] or segregation. . . .'." Watson, supra. at 149.
Both part of the City of Delaware and the territory sought to be annexed abut U.S. Route 23. As appellees note in their brief, U.S. Route 23 "is not a mere `strip' of land included in the annexation territory solely to link the municipality to the object of annexation." Rather, since U.S. Route 23 is a major north-south roadway between the cities of Columbus and Delaware, annexation to the City of Delaware of the property along such route will "serve to further integrate and expand a single, unified community." Middletown, supra. at 288. Both the territory sought to be annexed and the City of Delaware share, as the trial court stated in its Decision, "a common relationship with the city and a mutual dependence upon the public's use of Highway 23, with the continuing expansion of commercial and industrial development in a southerly direction along that dominant route". Annexation of the territory in this case will foster development along the U.S. Route 23 corridor between Delaware and Columbus. We concede that the land in question is a long irregular piece of land, however, its shape bears a direct relationship to the orderly development of the municipality in that the land runs along Route 23, a major connecting route between Delaware and Columbus. Therefore, we conclude the land in question is not a balloon on a string configuration in terms of shape. We also conclude that this is not a case where a narrow connecting strip of land bears no relationship to the orderly development of the land but rather, in the case sub judice, all of the land to be annexed bears a direct relationship to the orderly development of the land. Since there was a preponderance of reliable, probative and substantial evidence that the territory sought to be annexed is sufficiently adjacent to the City of Delaware and that annexation of the same complies with the concept of a municipality as a unified body, appellants' first assignment of error is overruled.
 II
Appellants also assign as error the trial court's conclusion that the territory sought to be annexed is not "unreasonably large". R.C. 709.033(E) prohibits annexation of territory that is "unreasonably large". "In determining an area is unreasonably large, the court engages in a three-pronged analysis: (1) the geographical character, shape, and size of the territory to be annexed in relation to both the territory to which it will be annexed and to the territory remaining after the annexation is completed; (2) the ability of the annexing city to provide necessary services to the added territory; and (3) the effect on the remaining territory if annexation is permitted, including whether annexation would render the township incapable of supporting itself by depletion of its tax base."
In Re Annexation of 1544.61 Acres, (1984), 14 Ohio App.3d 231,233.
The trial court, in its April 13, 1999, Decision, stated as follows in holding that the territory sought to be annexed was not "unreasonably large": "In this case, the City of Delaware occupies 14.287 square miles or 9,144 acres, so the annexing territory provides a 4.6% increment. During the last ten years, the city has accepted annexation of more than 2,500 acres with more than 2,000 dwelling units. Further, the proposed annexation territory removes only 1.37% of Delaware Township's territory and only 1.61% of Liberty Township's territory. By comparison with the city it joins or the townships it leaves behind, the annexing territory can hardly be characterized as "unreasonably large".
As has been stated previously, the territory sought to be annexed consists of approximately 422 acres which continuously border the city of Delaware for approximately 1,085 feet. The territory to be annexed then extends approximately two miles south of the City of Delaware towards Columbus along a major highway. The entire northern border of the annexation territory abuts the City of Delaware. Based on the foregoing we find that, based on the annexing territory's geographical character, shape and size, there was reliable, probative and substantial evidence supporting the trial court's determination that the annexation territory is not unreasonably large. The next factor that must be considered in determining whether the trial court erred in concluding that the territory sought to be annexed is not "unreasonably large" is the City of Delaware's ability to provide the necessary municipal services to the annexation territory. See In Re Annexation of 1544.61 Acres, supra. While appellants maintain that the townships' services are equal or better, this court previously has rejected such a comparison of services. See Stefanko v. Tuscarawas Twp. Bd. of Trustees (Aug. 5, 1991), Stark App. No. CA-8446, unreported. In the case sub judice, there was reliable, probative and substantial evidence presented via testimony at the public hearings as to the City of Delaware's ability to provide essential municipal services to the annexation territory. At a hearing held on April 20, 1998, Frank Ciarochi, the City Manager for the City of Delaware, testified that in accordance with R.C. 709.031, the Delaware City Council had adopted Resolution No. 98-12 on March 23, 1998. Such resolution provides that, upon annexation, the City of Delaware "will provide water, sewer, refuse, fire and police services, provided all necessary lines, hydrants, and other apparatus are installed by the property owner as required by the city and said services shall be provided under the same conditions and same costs as they are provided to other residents in the city of Delaware." In addition, on the same date, the Delaware City Council unanimously passed Resolution 98-13 "authorizing the extension of sanitary sewer and water lines to serve an area of approximately 421 acres proposed for annexation. . ." Tom Galitza, Director of Utilities for the City of Delaware, testified on the same date that "[t]he Department of Public Utilities has the infrastructure in place to serve the proposed annexation area" and that, from a capacity standpoint, the water and wastewater system for the City of Delaware was more than sufficient to handle the annexation area. Transcript of April 20, 1998, Proceedings at 59-60. Additional testimony was adduced at the public hearings on annexation regarding the City of Delaware's ability to provide sewer to the entire area covered by the annexation. Jim Olausen, the City of Delaware's Consulting Engineer who is with Civil Engineering Associates, testified that the entire annexation territory could be served by the municipal sanitary system. According to Olausen, "[t]he sanitary sewer would tie into the existing municipal system, extend south through the project, has the capacity and depth to handle the tributary [annexation] area." Transcript of April 28, 1998, hearing at 10. With regard to the provision of fire and emergency services, Captain Lee Vanderbosch of the Delaware Fire Department discussed the city's ability to provide such services to the areas covered by the annexation. Captain Vanderbosch testified that, if the territory were annexed, the City of Delaware would have automatic response type mutual aid agreements with all the township fire departments. In addition, Frank Ciarochi, the City Manager, testified that a new fire substation would soon be operational. Previously, Ciarochi, on or about April 24, 1998, in response to a request made at the April 20, 1998, annexation hearing, had provided appellant with a breakdown of both police and fire department personnel for the City of Delaware. In short, testimony was presented throughout the course of the hearings that the City of Delaware has both the ability and adequate resources, including personnel and equipment, to provide essential municipal services to the annexation territory. The trial court, therefore, did not err in determining that the annexation territory was not so unreasonably large so as to prevent the City of Delaware from providing essential municipal services. The final factor to consider in determining whether the annexation territory is unreasonably large is the effect on the remaining township territories if annexation is permitted. See In Re Annexation of 1544.61 Acres, supra. Appellants challenge the annexation on the ground that the configuration of the territory would split both Delaware and Liberty Townships and lead to confusion in the "coordination and provision of road maintenance, repair and snow removal services and in the provision of safety services." However, as the trial court noted in its April 13, 1999, Decision, "contrary evidence preponderates in showing that any such confusion would be minimal, and comparable to confusion at or near the boundaries for every governmental unit." Moreover, there is no evidence that annexation of the approximately 421 acres from Liberty and Delaware Townships will "disrupt the remainder of the [t]ownship[s]." Stefanko, supra. at 27. Based on the foregoing, we find that there was substantial, reliable probative evidence supporting the trial court's conclusion that the territory sought to be annexed was not unreasonably large. Appellants' second assignment of error is overruled.
 III
Appellants, in their third assignment of error, argue that the trial court erred in concluding that the general good of the territory would be served by annexation. Appellants specifically maintain that the annexation territory would lose significant benefits, including, but not limited to, township and county road maintenance, repair and snow removal services on roads included within the territory to be annexed and that a number of property owners opposing annexation would not benefit by the annexation. R.C. 709.033 requires that the board of county commissioners grant an annexation petition only if it determines that the general good of the territory sought to be annexed will be served by granting the annexation petition. In City of Middletown v. McGee (1988),39 Ohio St.3d 284, 530 N.E.2d 902, the Ohio Supreme Court stated: "Whether a proposed annexation will serve the general good of the inhabitants and owners of the territory sought to be annexed is a factual determination within the discretion of the board of county commissioners. (Citations omitted.) Consequently, a board of county commissioners' decision whether the general good of the area to be annexed will be served may be overturned only if the reviewing court finds it to be "unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." (Citations omitted).
We find that the trial court did not error in holding that the board of commissioners' decision that annexation would not serve the general good of the territory sought to be annexed was unsupported by the preponderance of substantial, reliable and probative evidence. Testimony was adduced throughout the course of the hearings that the majority of the territory's property owners desired annexation so that they could access a central sewer system and water supply. For example, Melanie Metzler, who owns property in the annexation territory, testified at the May 26, 1998, hearing, as follows: "What can the City of Delaware do for us? They [sic] can provide sewer and other city services that will allow for an orderly development of both commercial and residential land." Transcript of May 26, 1998, hearing at 44. Neither Liberty nor Delaware Townships currently have a central sewer system at the present time and there was a plethora of substantial, reliable and probative evidence presented at the public hearings that neither township will be able to provide sewer service in the near future. Dr. Robert Cape, a Liberty Township Trustee, testified at the June 8, 1998, hearing, that the Liberty Township trustees did not "at this time" have any ability to provide sewer service to the annexation territory. Transcript of June 8, 1998, hearing at 11. While Holly Foust, the Liberty Township Zoning Inspector, agreed that Delaware County could not provide sewer service to such territory for approximately 25 years, Delaware County Sanitary Engineer Jack Smelker, in an affidavit dated December 6, 1996, estimated that Delaware County would be unable to provide sewer services to the annexation territory for from ten to fifteen years. In contrast, as is discussed above, both Tom Galitza, Director of Utilities for the City of Delaware, and Consulting Engineer Jim Olausen testified during the annexation hearing that the annexation territory could be served by the City of Delaware's municipal sanitary sewer system. Appellants also question the City of Delaware's ability to provide municipal services, stating that "reliable, probative and substantial evidence was presented at the commissioner's hearing showing the inability of the city to provide services to the areas promised. . . .". Appellant's brief at 29. We, however, do not concur. There was substantial, reliable and probative evidence presented at the hearings as to the City of Delaware's ability to provide essential municipal services to the annexed territory. Frank Ciarochi, City Manager for the City of Delaware, testified that Delaware's City Council, on March 23, 1998, adopted Resolution 98-12 which provided that the city will accommodate water, sewer, refuse, fire and police services to the proposed annexation territory. In addition, at the April 28, 1998, annexation hearing, Ciarochi provided detailed information as to the breakdown of the police department personnel. Four days previously, Ciarochi had sent a letter to the Delaware County Administrator breaking down police and fire department personnel in the City of Delaware. Delaware Fire Department Chief Lee Vanderbosch testified that although the city did not have automatic response type mutual aid with any other department in the county, the city would have such aid if annexation occurred. In short, as the trial court noted in its April 13, 1999, Decision, there was testimony adduced at the annexation hearings that the City of Delaware has adequate personnel, equipment and resources to provide municipal services to the annexation territory. While appellants submit that the township services are superior to those that the City of Delaware could provide, our holding in Stefanko, supra precludes a weighing of services. The proper test to be applied with respect to annexation petitions is not what is the best for the annexation territory, but rather what is for the good of the territory. Smith, supra. at 614. Furthermore, we concur with the trial court's conclusion that there is no real basis for one commissioners's finding that annexation would disrupt township services and create confusion in the provision of such services to the annexation territory. In sum, the owners of 81.5% of the land to be annexed are in favor of the annexation. The land runs along a major highway and in order for the land to be developed, a sewer system must be accessible. The City of Delaware can provide that sewer system now. The townships are unable to do so and will remain unable to do so for years. In addition, "[i]n reviewing the history of the annexation statutes, we find that several key changes to these laws have confirmed the General Assembly's desire to avoid fragmented local governments and to encourage orderly urban growth." Emphasis added, In Re Peititon to Annex 320 Acres, 64 Ohio St.3d 585, 595. Since the trial court's conclusion that the general good of the territory would be served by annexation is supported by a preponderance of reliable, probative and substantial evidence, appellants' third assignment of error is overruled. Based on the foregoing, we find that the Delaware County Court of Common Pleas did not err as a matter of law in reversing the decision of the Delaware County Board of County Commissioners denying annexation since the decision of the Commissioners was not supported by a preponderance of reliable, probative and substantial evidence.
We find that the Decision of the Delaware County Court of Common Pleas was supported by a preponderance of reliable probative and substantial evidence.
The Judgment of the Delaware County Court of Common Pleas is, therefore, affirmed.
By EDWARDS, J. WISE, P.J. and HOFFMAN, J. concurs.