BAYCLIFFS CORPORATION, et al., Appellants,

v.

VILLAGE OF MARBLEHEAD, et al., Appellees.

[Cite as *Baycliffs Corp. v. Marblehead* (2000), 138 Ohio App.3d 719.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–99–054.

Decided Aug. 4, 2000.

*John D. Brown, Robert A. Brindza,* and *Joshua D. Goldstein,* for appellants.

*John A. Brikmanis,* for appellee Village of Marblehead.

*Sheilah H. McAdams,* for appellee Harold C. Clagg.

PIETRYKOWSKI, Judge.

This annexation case is before us on appeal from the Ottawa County Court of Common Pleas, which denied the petition for injunction filed by appellants Baycliffs Corporation and Carl J. Zipfel. For the reasons that follow, we find that the decision of the Ottawa County Court of Common Pleas must be affirmed.

The history of this case begins in August 1998, when Harold Clagg, agent for owners of property on Johnson's Island, filed a petition pursuant to R.C. 709.02 seeking annexation of Johnson's Island to the Village of Marblehead, Ohio.[1]

---

1. The annexation petition sought annexation of all of Johnson's Island and the causeway leading to Johnson's Island from the village of Marblehead.

Pursuant to R.C. 709.031 and 709.032, a public hearing was held on October 20, 1998 before the Ottawa County Board of Commissioners ("the commissioners"). All testimony at the hearing was given under oath, and the commissioners gave all parties the opportunity to ask questions of all of the witnesses. At the beginning of the hearing, the County Prosecutor, acting as legal counsel for the commissioners, explained that the parties would have the opportunity to submit posthearing briefs, but he admonished the parties to not include in the briefs any additional evidence or facts. If such additional evidence or facts appeared in the briefs, it would be disregarded. At the conclusion of the hearing, in response to a question, Commissioner Koebel reiterated that the briefs should contain no additional evidence. On January 14, 1999, the commissioners passed a resolution approving the annexation of Johnson's Island and the causeway to the Village of Marblehead.

On March 26, 1999, appellants filed the instant complaint for a stay and for preliminary and permanent injunction pursuant to R.C. 709.07. The stay was granted by judgment entry filed April 5, 1999, and a hearing was held on the complaint for injunction on June 7, 1999. Prior to the June 7 hearing, the court, by judgment entry dated May 24, 1999, limited the evidence it would accept at the hearing.[2] The trial court ruled that it would limit the evidence at the hearing to the following matters:

"1. The court will receive and consider the entire record of the proceedings below, including a transcript of testimony;

"2. The court will receive evidence at this trial offered to establish the adverse effect of the annexation on the petitioners, unless the same has been stipulated by defendants, and the nature of any error in the proceedings before the Board of County Commissioners;

"3. The court will not receive new evidence (beyond the record below) as to the discretionary issues which were considered and decided by the County Commissioners, including whether the general good of the territory sought to be annexed will be served if the annexation petition is granted and whether the territory is unreasonably large. The latter issues will be reviewed and considered by the court on the basis of the record and hearing which was held before the County Commissioners on January 14, 1999."

Following the hearing, on July 19, 1999, the trial court filed a judgment entry in which it concluded that:

---

2. This judgment entry was in response to appellants' motion for a limited evidentiary hearing pursuant to Ohio Revised Code Section 709.07(C).

"The condition of the evidence presented at the hearing is such that it can support the commissioners' findings on the annexation petition. Further, Plaintiffs [appellants] have failed to establish by clear and convincing evidence that there was any error in the proceedings before the Board of Ottawa County Commissioners, or that the findings or order of the Board were unreasonable or unlawful."

Accordingly, the trial court dismissed appellants' complaint for injunctive relief. Appellants appeal from this judgment, setting forth the following assignments of error:

"Assignment of error No. 1:

"The trial court erred by limiting the testimony it received into evidence at its hearing on appellants' complaint for a permanent injunction against annexation to matters relating only to the adverse affect of this annexation attempt on appellants and the nature of any error in the proceedings conducted on the petition.

"Assignment of error No. 2:

"The trial court erred by finding that there was no error in the proceedings that the commissioners conducted on the petition when appellants demonstrated that the commissioners accepted evidence after adjourning their public hearing on the petition.

"Assignment of error No. 3:

"The trial court erred by upholding the commissioners' finding that the petition satisfied the adjacency requirement of R.C. 709.02.

"A. The use of land owned by the state of Ohio to satisfy the adjacency requirement is impermissible.

"B. The territory is not sufficiently contiguous with Marblehead.

"Assignment of error No. 4:

"The trial court erred by upholding the commissioners' finding that the petition contained an accurate and legally sufficient 'full description' of the territory.

"Assignment of error No. 5:

"The trial court erred by upholding the commissioners' finding that the petition satisfied R.C. 709.033(E) when appellants clearly and convincingly demonstrated that such finding was erroneous, unreasonable and unlawful because the general good of the territory would not be served by annexation to Marblehead.

"A. The commissioners applied an incorrect and unlawful standard of review in determining that the general good of the territory would be served by annexation to Marblehead.

"B. The general good of the territory would not be served by annexing to Marblehead because annexation will prevent further development of all Johnson's Island land that fronts on a private roadway.

"C. The record evidence does not support the commissioners' finding that the general good of the territory would be served by annexation.

"Assignment of error No. 6:

"The trial court erred by finding that the commissioners' decision to approve the petition was reasonable and lawful where appellants clearly and convincingly demonstrated that the territory sought to be annexed was unreasonably large[.]"

Complaints for injunctions in annexation cases are governed by R.C. 709.07. R.C. 709.07(A) sets forth the requirements for the petition. That section provides:

"(A) Within sixty days from the filing of the papers relating to the annexation with the auditor or clerk as provided by section 709.033 of the Revised Code, any person interested, and any other person who appeared in person or by an attorney in the hearing provided for in section 709.031 of the Revised Code, may make application by petition to the court of common pleas praying for an injunction restraining the auditor or clerk from presenting the annexation petition and other papers to the legislative authority. The petition of a person interested shall set forth facts showing:

"(1) How the proposed annexation adversely affects the legal rights or interests of the petitioner;

"(2) The nature of the error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or how the findings or order of the board is unreasonable or unlawful."

The Supreme Court of Ohio has held that any person owning land in the territory to be annexed who does not wish to be annexed has, without more, shown that his interests will be adversely affected by the annexation. *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 286, 530 N.E.2d 902, 904. Practically speaking, then, the only burden on a R.C. 709.07 petitioner is to set forth facts showing the nature of the error in the commissioners' hearing or how the commissioners' findings or order was unreasonable or unlawful. See R.C. 709.07(A).

R.C. 709.07(C) and (D) govern the trial court's hearing on the petition. Those sections provide:

"(C) The court of common pleas shall hear the petition not less than twenty days from the filing thereof, and at the hearing the court may hear evidence upon the matters averred in the petition.

"(D) The petition for injunction shall be dismissed unless the court finds the petitioner has shown by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner, and that:

"(1) There was error in the proceedings before the board of county commissioners pursuant to section 709.032 or 709.033 of the Revised Code, or that the board's decision was unreasonable or unlawful; or

"(2) There was error in the findings of the board of county commissioners."

In their first assignment of error, appellants contend that the trial court erred in limiting the evidence it would receive at the hearing. Appellants complain that they were not given the opportunity at the hearing to cross-examine witnesses who testified before the commissioners, thereby hindering appellants in meeting their burden under R.C. 709.07(A)—to show the nature of the error in the proceedings below or that the commissioners' findings or order were unreasonable or. unlawful. Because a trial court has discretion to decide which evidence to admit or deny, we review this assignment of error for abuse of discretion. See *Peters v. State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290, 292–293; *Olmsted Twp. Bd. of Trustees v. Berea* (June 18, 1998), Cuyahoga App. No. 73782, unreported, 1998 WL 323601. The Supreme Court of Ohio has stated that "[t]he term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169 173, 404 N.E.2d 144.

R.C. 709.07(C), which governs the conduct of the hearing before the trial court, does not dictate that the trial court allow cross-examination or new evidence. Instead, that section provides, "at the hearing the court *may hear evidence* upon the matters averred in the petition." (Emphasis added.) The very nature of a proceeding under R.C. 709.07 leads us to conclude that the trial court is not required to accept additional testimony in the form of cross-examination or in any other form. The Supreme Court of Ohio, contrasting the remedies in R.C. 709.07 and R.C. 2506.04 (allowing for appeals from administrative agencies), has stated:

"R.C. 709.07 places an increased burden upon the party bringing the action to prove that the board of county commissioners erred in its determination. In essence, the complaining party seeking to enjoin an approved annexation must establish by clear and convincing evidence that the annexation would adversely affect the petitioner's legal rights or interests, and there was error in the board proceedings, or the result reached by the board was unreasonable or unlawful. *This standard of review is highly deferential to the board of county commission-*

*ers.* However, when a party brings a Section 2506 appeal a virtual *de novo* examination of the record is conducted by the court pursuant to R.C. 2506.04." (Emphasis added.) *In re Petition to Annex 320 Acres to the Village of South Lebanon, etc.* (1992), 64 Ohio St.3d 585, 594, 597 N.E.2d 463, 469–470.

In other words, a petitioner in a R.C. 709.07 proceeding is only entitled to have the trial court review the record for alleged error in the proceeding before the commissioners. See *Miller v. Brahm* (Feb. 21, 1995), Franklin App. No. 94APE07–1069, unreported, 1995 WL 78970. Accordingly, the trial court should accept new evidence only to the extent that the new evidence aids it in determining whether error occurred below or whether the commissioners' findings or order were unlawful or unreasonable based on the record as it existed below. See *id.* Since the trial court in this case limited the evidence it would hear for just these purposes, we find that the trial court did not abuse its discretion in doing so.

Notwithstanding the above, at least one court has held that a trial court abuses its discretion in refusing to allow cross-examination of witnesses who testified at the commissioners' hearing when cross-examination was likewise not permitted at the commissioners' hearing. See *Olmsted Twp. Bd. of Trustees v. Berea* (July 22, 1999), Cuyahoga App. No. 74140, unreported, 1999 WL 528511; *Olmsted Twp. Bd. of Trustees v. Berea* (June 18, 1998), Cuyahoga App. No. 73782, unreported, 1998 WL 323601. In this case, the commissioners allowed all parties to examine all of the witnesses. Since appellants had the opportunity to ask questions of all of the witnesses, we hold that the trial court did not abuse its discretion in limiting the evidence at the hearing to matters that would permit it to determine if error occurred below or if the commissioners' findings or order were unlawful or unreasonable based upon the record before them. · Accordingly, appellants' first assignment of error is found not well taken.

In their second assignment of error, appellants contend that the trial court erred in finding that there was not error below when appellants demonstrated that the commissioners improperly accepted evidence after the close of the hearing. In doing so, according to appellants, the commissioners violated R.C. 709.032, which requires that the hearing be public. Specifically, appellants complain that appellees, in their posthearing briefs, made reference to a pending amendment to the Village of Marblehead Subdivision Code that would, ostensibly, allow appellants to continue with the development of their property in the event that the island was annexed to the village of Marblehead. (Appellants' chief concern in these proceedings appears to be the alleged legal obstacles to their continued development of property they own on Johnson's Island.) Appellees apparently concede that they made mention of a proposed amendment to the Village of Marblehead Subdivision Code, but they deny that the commissioners

improperly considered new evidence. We agree. There is no evidence in the commissioners' resolution approving the annexation that they considered the proposed amendment, and the commissioners made clear at the hearing that any new evidence would be disregarded. Therefore, we agree with the trial court that the commissioners did not err by accepting new evidence after the close of the hearing. The second assignment of error is found not well taken.

Appellants contend in their third assignment of error that the trial court erred in upholding the commissioners' finding that the petition satisfied the adjacency requirement of R.C. 709.02. R.C. 709.02 provides:

"The owners of real estate adjacent to a municipal corporation may, at their option, cause such territory to be annexed thereto, in the manner provided by sections 709.03 to 709.11 of the Revised Code. * * *."

Appellants claim, first, that appellees cannot use the causeway between Johnson's Island and the village of Marblehead to establish adjacency because the use of the causeway in this manner is not a public use as required by R.C. 1506.10. Appellants also argue that, even if appellees could properly use the causeway in this manner, Johnson's Island would still not be adjacent to Marblehead, as that term is used in the statute, because the annexation would lead to the sort of "balloon-on-a-string" configuration that courts frown upon in passing on annexation petitions.

Appellants rely on R.C. 1506.10 to support their proposition that appellees may not use the causeway in the annexation petition to satisfy the adjacency requirement of R.C. 709.02. R.C. 1506.10 provides:

"It is hereby declared that the waters of Lake Erie consisting of the territory within the boundaries of the state, extending from the southerly shore of Lake Erie to the international boundary line between the United States and Canada, together with the soil beneath and their contents, do now belong and have always, since the organization of the state of Ohio, belonged to the state as proprietor in trust for the people of the state, for the public uses to which they may be adapted, subject to the powers of the United States government, to the public rights of navigation, water commerce, and fishery, and to the property rights of littoral owners, including the right to make reasonable use of the waters in front of or flowing past their lands. * * *."

This statute does not appear to have any direct application to this case as this statute provides that when submerged lands are physically adapted or changed, it must be done for a public use. This statute, or its predecessor, would have been applicable at the time that the submerged land was leased and the causeway was built, but it has no application to the present situation.

Next, appellants argue that, if the causeway is included in the territory to be annexed, it leads to the type of "balloon-on-a-string" or "shoestring" or "gerry-mandered" annexation that Ohio courts discourage. The Supreme Court of Ohio has directly addressed the adjacency requirement of the Ohio annexation statutes. According to the Supreme Court:

"The terms 'adjacent,' 'contiguous' and 'adjoining' are all used by the Revised Code statutes governing annexation. See R.C. 709.02, 709.13 through 709.16, 709.18, 709.22 through 709.24. These terms are not defined by the Revised Code, but are generally understood to be synonymous in Ohio and in other jurisdictions. While it is generally agreed that some touching of the municipality and the territory to be annexed is required, the law is unsettled as to what degree of touching is needed to fulfill the contiguity requirement.

"In Ohio, courts have frowned upon the use of connecting strips of land to meet the contiguity requirement when annexing outlying territory not otherwise connected to the annexing municipality. Such annexations are usually referred to as 'strip, shoestring, subterfuge, corridor, and gerrymander annexations.' In determining whether a proposed annexation satisfies the contiguity requirement, these courts, as well as the courts of other jurisdictions, have noted that the basic concept of a municipality is that of a unified body, and have consistently inquired whether an annexing municipality would conform to this concept if a proposed annexation were to take place." (Citations omitted.) *Middletown,* 39 Ohio St.3d at 287, 530 N.E.2d at 905.

The *Middletown* case and other Ohio cases discussing adjacency do not involve the proposed annexation of an island as we have here; rather, the cases discussing adjacency do so in the context of annexations on the mainland. See, *e.g., Smith v. Liberty Twp. Bd. of Trustees* (Dec. 30, 1999), Delaware App. No. 99CA–H–05–023, unreported, 2000 WL 93678; *In re Petition to Annex Approximately 28.215 Acres of Cambridge Twp. Land to the City of Cambridge, etc.* (Nov. 18, 1998), Guernsey App. No. 98 CA 05, unreported, 1998 WL 817688; *In re Petition for Annexation of 75.14 Acres of Land By Thomas H. Wiechel* (Sept. 16, 1996), Clermont App. No. CA96–02–013, unreported, 1996 WL 520396, discretionary appeal not allowed (1997), 77 Ohio St.3d 1547, 674 N.E.2d 1186; *Bd. of Trustees, Harrison Twp., Ohio v. Anness* (Sept. 20, 1995), Hamilton App. No. C–940271, unreported, 1995 WL 553305. The parties do not cite cases involving annexations of islands, and the court's independent search of Ohio law has not uncovered any such authority. Though many Ohio cases discuss "islands," they refer to islands of land created on the mainland, *i.e.,* pockets of land in one political subdivision nearly entirely surrounded by another political subdivision. See, *e.g., Dabkowski v. Baumann* (1963), 175 Ohio St. 89, 23 O.O.2d 386, 191 N.E.2d 809; *In re Annexation of 64.301 Acres in Plain Twp. to the City of N.*

*Canton* (Mar. 13, 2000), Stark App. No.1999CA00324, unreported, 2000 WL 330028; *In re Petition for Annexation of 315.118 Acres, More or Less in the Twp. of Xenia* (Mar. 20, 1998), Greene App. No. 97 CA 76, unreported, 1998 WL 127512. These cases are not particularly relevant to this unique situation.

■ Perhaps the best way to resolve the adjacency question is to consider the policy behind the adjacency requirement. As the Supreme Court noted in *Middletown,* territory to be annexed is "adjacent" to the annexing municipality if the annexation promotes the creation or existence of a "unified body," *Middletown,* 39 Ohio St.3d at 287, 530 N.E.2d at 905, or, in other words, a community. A "unified body" has been described as follows:

" 'The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses; and having a community of interest because [they are] residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separate [*sic* ] or segregation. * * *' " *Middletown,* 39 Ohio St.3d at 287, 530 N.E.2d at 905, quoting *Watson v. Doolittle* (1967), 10 Ohio App.2d 143, 149, 39 O.O.2d 267, 271, 226 N.E.2d 771, 775.

■ In this case, the record establishes that residents of Johnson's Island must travel through Marblehead to reach the causeway and, ultimately, Johnson's Island. The record also establishes that, though the island itself is adjacent to no other land, the causeway leading to the island is adjacent to Marblehead and to no other political subdivision. In addition, an expert in urban geography testified by way of affidavit that Johnson's Island and the village of Marblehead are contiguous in terms of land use; the expert testified that the character and densities of the homes on Johnson's Island are compatible with the residential character of homes in the village of Marblehead. Based on the record, we find that annexation of Johnson's Island to the village of Marblehead satisfies the ideal of a "unified body." See *Middletown,* 39 Ohio St.3d at 287, 530 N.E.2d at 905. Therefore, the trial court was correct in finding that appellants did not establish by clear and convincing evidence that the proposed annexation does not satisfy the adjacency requirement. We find appellants' third assignment of error not well taken.

■ Appellants claim in their fourth assignment of error that the trial court erred in finding that the petition contained a full description of the territory to be annexed. Specifically, appellants complain that the description of the territory, which included a reference to various plats on the island and a map of the area to

be annexed, was insufficient because it did not include a metes and bounds legal description. Appellants concede, however, that a metes and bounds description is not required by R.C. 709.02(A).[3]

In this case, pursuant to R.C. 709.031(C), the commissioners referred appellees' description of the territory in the annexation petition to the county engineer. The county engineer prepared a report that was read into the record by the commissioners at the start of the hearing. The county engineer stated in his report that appellees' description of the land contained only a few minor errors that could be easily corrected and that the description was not fatally flawed. At the hearing, appellee Clagg moved to amend the petition to satisfy the engineer's concerns, and the commissioners in their resolution approving the annexation accepted the amendment. Based on this record, we agree with the trial court that the commissioners did not err in deciding that appellees had provided a full description of the territory. Therefore, appellants' fourth assignment of error is found not well taken.

In their fifth assignment of error, appellants contend that the trial court erred in upholding the commissioners' finding that appellees had satisfied R.C. 709.033(E) when appellants had established by clear and convincing evidence that annexation would not serve the general good of the territory. R.C. 709.033 provides:

"After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:

" * * *

"(E) The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted."

First, appellants argue that the commissioners applied the wrong standard for determining the general good of the territory. According to appellants, the commissioners erred in applying the test set out in *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 693 N.E.2d 219. In *Smith*, a "one hundred percent annexation" case (where all property owners in the territory to be annexed agree to the annexation), the Supreme Court affirmed the court of appeals' decision that a comparison of available services from the competing political subdivisions is inappropriate. According to the court of appeals hearing the *Smith* case, in one hundred percent annexation cases the commissioners should only inquire as to whether the annexing municipality can provide needed

---

**3.** That section requires only a full description and an accurate map or plat of the territory. See R.C. 709.02(A).

services to the territory. If so, then annexation is for the good of the territory. The Supreme Court agreed. *Smith,* 81 Ohio St.3d at 615, 693 N.E.2d at 224–225. In the instant case, appellants claim that the commissioners' reliance on *Smith* is erroneous because this is not a one hundred percent annexation case.

We do not find any indication in the commissioners' resolution that it relied upon the *Smith* case in deciding that annexation was for the good of the territory. In fact, much of the hearing was devoted to a comparison of services. Nevertheless, regardless of which standard the commissioners applied, the record amply supports their ultimate conclusion that annexation would be for the general good of the territory.

In cases where annexation is opposed, the commissioners may, in their discretion, compare the services available from the competing political subdivisions. See *Middletown,* 39 Ohio St.3d at 288, 530 N.E.2d at 906 ("Whether a proposed annexation will serve the general good of the inhabitants and owners of the territory sought to be annexed is a factual determination within the discretion of the board of county commissioners."). Of course, this discretion is not without limits. There is some authority that, in determining the good of the territory, commissioners may not properly consider the fact the property owners may be required to pay income taxes to the annexing municipality, see *In re Petition for Annexation of 165.65 Acres More or Less from Falls Twp. to the City of Zanesville* (Jan. 10, 1996), Muskingum App. No. CT–94–32, unreported, 1996 WL 74664, and the Supreme Court of Ohio has determined that commissioners may not properly consider schools when deciding what is good for the territory, *Smith,* 81 Ohio St.3d at 615, 693 N.E.2d at 224–225. In addition, courts have held that, in determining the good of the territory, the focus should be on the good of the territory to be annexed, not on the good of political subdivision to which the territory would be annexed. *In re Annexation of 118.7 Acres in Miami Twp. to City of Moraine* (1990), 52 Ohio St.3d 124, 131, 556 N.E.2d 1140, 1146–1147, citing *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 102, 67 O.O.2d 97, 99, 310 N.E.2d 257, 259. Finally, commissioners are to consider what is *good* for the territory, not what is best for the territory, *Smith,* 81 Ohio St.3d at 614–615, 693 N.E.2d at 223–225, and the commissioners are to do so for the entire territory and should not give sway to a single owner's preferences; *In re Petition to Annex 320 Acres to the Village of S. Lebanon,* 64 Ohio St.3d at 599, 597 N.E.2d at 473.

Keeping these principles in mind, we cannot say that the commissioners erred in finding that the general good of the territory would be served by the annexation. There was testimony that fire and police response time would be slightly better if the island was annexed to the village of Marblehead, that the Marblehead police force would patrol the island more frequently, and that, upon

annexation, the residents of the island would receive benefits from the village of Marblehead that they now have to pay for themselves, such as snow removal, road salting, ditch maintenance, street lighting, and street signs. In addition, the residents would be entitled to vote in both village of Marblehead and Danbury Township elections, giving the island residents more of a say on matters that concern them. Based on this record, we do not find that appellants have established by clear and convincing evidence that the commissioners abused their discretion in finding that annexation would serve the general good of the territory.

Finally, with regard to the fifth assignment of error, appellants contend that the commissioners erred in finding that the good of the territory would be served by annexation because annexation would prevent further development of all land on Johnson's Island that fronts on a private road. Appellants own numerous lots on the island that they have begun to develop. They fear that their plans for future development of their land will be hampered or halted by village of Marblehead ordinances and/or regulations. However, the record is replete with testimony of the many and varied ways that these concerns may be resolved, including the adoption of favorable zoning ordinances to conform to the existing uses of the property on the island, exceptions for nonconforming use, variances, a change in the character of the roads on the island, and so forth. For this reason, we find that appellants have not established by clear and convincing evidence that the commissioners erred in finding that annexation would serve the good of the territory. Appellants' fifth assignment of error is found not well taken.

In their sixth assignment of error, appellants argue that the trial court erred in upholding the commissioners' decision since appellants established by clear and convincing evidence that the territory is unreasonably large. See R.C. 709.033(E) (the commissioners should allow annexation if it finds, *inter alia,* that the territory is not unreasonably large). In determining whether a territory to be annexed is unreasonably large, commissioners should consider:

"(1) the geographic character, shape and size (acreage) of the territory to be annexed in relation to the territory to which it will be annexed (the city), and in relation to the territory remaining after the annexation is completed (the remaining Township area); * * *

"(2) the ability of the annexing city to provide the necessary municipal services to the added territory. (Geographic as well as financial 'largeness' may be considered. * * *)

"(3) the effect on remaining township territory·if annexation is permitted. If the territory sought to be annexed is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting

itself, then the Board might reasonably conclude the proposed annexation is unreasonably large, although such annexation would benefit the territory sought to be annexed." *In re Annexation of 1,544.61 Acres in Northampton Twp. to City of Akron* (1984), 14 Ohio App.3d 231, 233, 14 OBR 259, 261, 470 N.E.2d 486, 489, quoting *Herrick v. Bd. of County Commrs.* (Jan. 23, 1980), Summit App. No. 9425, unreported.

In arguing this assignment of error in their brief, appellants merely re-argue the contiguity (or adjacency) argument. Since we have already held that Johnson's Island and the village of Marblehead are sufficiently contiguous to allow annexation, no further discussion is required for the sixth assignment of error. We hold that appellants have not established by clear and convincing evidence that the commissioners erred in finding that the territory was not unreasonably large. Accordingly, appellants' sixth assignment of error is found not well taken.

Since substantial justice has been done the parties complaining, the decision of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.

*Judgment affirmed.*

MELVIN L. RESNICK and KNEPPER, JJ., concur.