In re Annexation of 1,544.61 Acres in Northampton Township to City of Akron.

(No. 11198—Decided April 11, 1984.)

*Mr. John E. Holcomb,* for appellants.

*Mr. Alfred E. Schrader,* for appellees.

BAIRD, J. This case concerns the proposed annexation to the city of Akron of 1,544.61 acres of land presently located in Northampton Township, Summit County, Ohio. The public hearing required by R.C. 709.031 *et seq.* was held before the Summit County Council, which subsequently denied the annexa-

tion petition. The property-owner petitioners then filed an R.C. Chapter 2506 appeal in the common pleas court.

Thereafter, the Northampton Township Trustees, the County Executive and the Woodridge Board of Education all attempted to intervene as parties to the pending litigation, which intervention was denied by the common pleas court. Only the trustees appealed that decision, which was affirmed by this court. *In re Annexation of 1,544.61 Acres of Land* (May 19, 1982), Summit App. No. 10433, unreported. Subsequent to that ruling of this court, another motion for intervention was filed by the trustees, and sustained by the common pleas court, apparently on the authority of the later decision in *State, ex rel. Bd. of Trustees,* v. *Davis* (1982), 2 Ohio St. 3d 108. At that point, the common pleas court specified the parties to the pending litigation to be the property owners and the Northampton Township Trustees.

The denial of the annexation was ultimately affirmed by the common pleas court and the present appeal from that judgment has been perfected by the property owners. The Northampton Township Trustees are the appellees.

The annexation petition was signed by the owners of three single-family residences, The Musical Arts Association, and Kent State University Foundation. The latter two owners operate, respectively, Blossom Music Center and the adjacent Porthouse Theater. The land is located in Northampton Township, which lies generally to the north of the city of Akron; it extends from the present southern boundary to the present northern boundary of the township, while leaving unaffected township territory both to the east and to the west thereof. The land was characterized in appellants' brief as being approximately two miles in width by two miles in length. All of the land in question lies within the Cuyahoga Valley National Recreation Area. Some of the land in question has been acquired by the federal government, as a part of the Cuyahoga Valley National Park, and some parcels have been leased back to the former owners, who continue to make their homes on such land. Several such persons objected to the annexation, as did the Woodridge Board of Education, record owner of a parcel, title to which may or may not have reverted back to a former owner. The federal government took no position with respect to the annexation.

Assignment of Error 1

"The lower court erred by finding the Blossom annexation petition was 'unreasonably large.'"

In discharging the duties prescribed by the annexation statutes for the board of county commissioners, the Summit County Council was governed by the provisions of R.C. 709.033, which provides, in part, as follows:

"After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:

"* * *

"(D) The territory included in the annexation petition is not unreasonably large; * * *"

In this case, the county council adopted Resolution No. 81-321, which concluded that the territory is unreasonably large and denied the annexation. In affirming denial of the annexation, the common pleas court held that the finding that the territory is unreasonably large was not illegal, arbitrary, capricious or unreasonable, and that it was based upon a preponderance of substantial, reliable and probative evidence. The propriety of that determination is the principal issue presently before this court.

This court has previously presented the framework for judging whether a

territory is unreasonably large for annexation purposes.

"Any issue of 'reasonableness' necessitates a comparison, a weighing of pros and cons. Therefore, the determination of [what is] unreasonably large requires a three-pronged analysis * * *:

"(1) the geographic character, shape and size (acreage) of the territory to be annexed in relation to the territory to which it will be annexed (the city), and in relation to the territory remaining after the annexation is completed (the remaining Township area); * * *

"(2) the ability of the annexing city to provide the necessary municipal services to the added territory. (Geographic as well as financial 'largeness' may be considered. * * *)

"(3) the effect on remaining township territory if annexation is permitted. If the territory sought to be annexed is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting itself, then the Board might reasonably conclude the proposed annexation is unreasonably large, although such annexation would benefit the territory sought to be annexed." *Herrick* v. *Bd. of County Commrs.* (Jan. 23, 1980), Summit App. No. 9425, unreported, at 6.

Of the three factors mentioned in the *Herrick* case, the common pleas court correctly determined that the first factor is of prime importance as relates to this case. Its review of the geographic character, shape and size of the territory in relation to both the annexing city and the township noted that, not only does the territory encompass over one thousand five hundred acres, but also it comprises eleven percent of the territory of the township. (We note also that annexation proponents presented evidence that the figure is 12.7 percent.) The court noted that the shape of the territory would not only create "islands" of township territory, but would literally split the township into two parts. The court also referred to that part of the Sowa affidavit, presented by annexation proponents, which indicates that the territory contains only four houses, housing only eight residents; and the court noted that the undeveloped state of the territory provided a certain unique character not often found in land within close proximity to major urban areas. Accordingly, the common pleas court found sufficient evidence to support findings of the Summit County Council that the territory is unreasonably large.

The standard of review provided by R.C. 2506.04 is that the common pleas court must weigh the evidence before it to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the decision made by the agency from which the appeal is taken. *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202 [12 O.O.3d 198]. While the inquiry is essentially a legal question as to the presence or absence of the necessary quantum of evidence, it is a hybrid form of review; it inevitably involves a consideration of the evidence, in the sense of weighing of the relative evidentiary value of the testimony and exhibits, and in the sense of considering whether the administrative determination rests upon inferences improperly drawn from the evidence. Thus, to a limited extent, a substitution of judgment by the reviewing common pleas court is permissible. *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111 [17 O.O.3d 65]. In determining whether that standard of review was correctly applied by the common pleas court, however, this court has a limited function, which does not involve a determination as to the weight of the evidence. Our inquiry is limited to a determination of whether we can say, as a matter of law, that there did exist a preponderance of reliable, probative and substantial evidence to support a finding that the annexation territory is not un-

reasonably large. If so, we must reverse the common pleas court; otherwise, the judgment of that court as to that point must be affirmed. *Dudukovich, supra,* at 207, 208.

We have reviewed in detail the testimony that was adduced at the public hearing, as well as the documentary evidence that is also part of the record in this case. Based on our review of the evidence in the record, and the inferences reasonably to be gleaned therefrom, we cannot conclude as a matter of law that a preponderance of reliable, probative and substantial evidence supports a finding that the territory is not unreasonably large. Accordingly, the ruling of the common pleas court as to that point must be affirmed.

In reaching these conclusions, we note that the factors mentioned above as having been alluded to by the common pleas court are essentially undisputed.

We note also that it is undisputed that the land in question is presently largely undeveloped, and that it will remain in that state, due to its inclusion in the national parks system. The common pleas court also alluded to that fact, and suggested that it was of significance in relation to the question of whether the area is unreasonably large. Appellants contend that such significance is misplaced, and that it is inappropriate to suggest that undeveloped land cannot be subject to annexation. While the latter point is of course true, it does not follow that the future status of the land can never have a bearing on whether the territory is unreasonably large. In most cases, the future of territory cannot be predicted with certainty; in this case, it can, with almost total certainty, to the point where that known future becomes part of the geographic character of the land. It is conceded that "* * * overall Akron is urban and developed and Northampton rural and less developed * * *." Since the land in question will not be developed, its geographic charac-

ter will remain more like Northampton and less like Akron. A little of that may go a long way; what may be a reasonable size for one purpose may be unreasonable for another. In this case, the future use of this land is part of its geographic character. Since the test is the geographic character of the territory in question, in relation to both the city and the township, we believe that this unique feature of this land is a proper consideration. Though some inconsistencies of use and development are inevitable in any annexation, the pervasive inconsistency of this one, in tandem with its sheer size, puts it over the brink of acceptability.

The assignment of error is overruled.

Assignments of Error 2 and 3

"2.  The lower court erred by not finding that the Blossom annexation petition was for the general good of the territory sought to be annexed.

"3.  The lower court erred by failing to find that the requirements of R.C. 709.033 had been complied with and that this petition should have been granted."

As previously noted, the Summit County Council was governed in its disposition of this matter by R.C. 709.033, which provides as follows:

"After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:

"(A)  The petition contains all matter required in section 709.02 of the Revised Code.

"(B)  Notice has been published as required by section 709.031 of the Revised Code.

"(C)  The persons whose names are subscribed in the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signa-

tures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed.

"(D) The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted.

"The board of county commissioners shall grant or deny the petition for annexation within ninety days after the hearing set pursuant to section 709.031 of the Revised Code.

"If the board of county commissioners grants the petition for annexation it shall enter on its journal all the orders of the board relating to the annexation and deliver a certified transcript of all orders of the board, signed by a majority of the members of the board, the petition, map, and all other papers on file relating to the annexation proceedings to the auditor or clerk of the municipal corporation to which annexation is proposed."

The plain language of the statute provides that, before an annexation petition may be granted, all of the prescribed findings must be made. If any of the statutory prerequisites are resolved adversely to the annexation, it cannot be granted. County council found that the territory was unreasonably large. When the common pleas court affirmed that decision, based on the appropriate standard of review, the case was, for all practical purposes, resolved. Though there is a requirement that a court of appeals rule upon all assignments of error properly submitted (App. R. 12[A]), there is no similar requirement relating to common pleas court, which is required to meet only that issue or those issues which are necessary in order to resolve the case. It was not error for the common pleas court not to rule on those points, and the assignments of error are overruled.

The judgment is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and MAHONEY, J., concur.