OPINION
On October 30, 1998, the Board of Education of the Mason City School District ("the Board of Education"), Frank and R. Elizabeth Batsche, and William and Margaret Hammeran filed a petition to annex 101.7063 acres of land ("annexation territory") located in Deerfield Township, Ohio ("the Township") to the city of Mason ("Mason") pursuant to R.C. 709.02. The Board of Education owns approximately ninety-six acres of the annexation territory in two vacant tracts of land. The remainder of the annexation territory consists of a five-acre residential property owned by the Batsches and a 0.251 acre portion of Mason-Montgomery Road owned by the Hammerans. All five owners signed the annexation petition.
The annexation territory is located within a four hundred acre island of Township territory. The "island" is separated from the main body of the Township and is surrounded on its west, south, and east sides by Mason. The north side of both the "island" and the annexation territory fronts Bunnel Road in Turtlecreek Township. The upper west side of the annexation territory borders Mason for approximately three hundred sixty-six feet along Mason-Montgomery Road.
In January and March 1999, the Warren County Board of Commissioners ("the Board") held an evidentiary hearing on the petition in accordance with the procedures set forth in R.C.709.032. Ten witnesses testified at the hearing and numerous affidavits and other exhibits were presented which detailed the respective levels of police, fire, water, sewer, and roadway maintenance services Mason and the Township could provide to the annexation territory. The proponents of the annexation included the five owners of the annexation territory. The Township opposed the annexation but no owner within the annexation territory testified against the annexation.
On March 9, 1999, the Board passed Resolution 99-346 in which it unanimously approved the annexation. The Board found, interalia, that the map or plat of the annexation territory was accurate, that the annexation territory was not unreasonably large, and that the services available to the annexation territory from Mason were adequate and acceptable. The Board further found that the "general good" of the annexation territory would be served by approving the annexation petition.
On April 28, 1999, the Deerfield Township Board of Trustees, its members, and the Township clerk ("appellants") filed a petition in the Warren County Court of Common Pleas to enjoin the annexation pursuant to R.C. 709.07. The trial court held a hearing in September 1999. By decision filed October 12, 1999, the trial court denied appellants' petition for injunction. The trial court found that while the legal rights of the Township might be adversely affected by the annexation, appellants had failed to show by clear and convincing evidence that the annexation territory was unreasonably large. The court also found no evidence that Mason could not adequately provide necessary fire, police, utility, and other services to the annexation territory. Appellants now appeal, setting forth the following assignment of error:
 The Trial Court erred in finding that the area to be annexed was not unreasonably large as the area is oddly shaped and the township's ability to provide water service to a large portion of the township will be adversely affected.
 Annexation is a statutory process which is governed by R.C. Chapter 709. R.C. 709.02 permits the owners of land adjacent to a municipal corporation to file an annexation petition with the board of county commissioners. A public hearing on the petition is subsequently held before the board of county commissioners at which both proponents and opponents of the annexation are permitted to offer evidence. See R.C. 709.032. Pursuant to R.C. 709.033, the board of county commissioners is then required to approve the annexation petition if several criteria are met.
Once the petition is approved by the board of county commissioners, any "interested person" or a board of township trustees that appeared at the annexation hearing may bring suit in the common pleas court to enjoin the annexation. See R.C.709.07(A); In re Appeal of Bass Lake Community, Inc. (1983),5 Ohio St.3d 141. R.C. 709.07 governs such actions and provides in pertinent part:
 (D) The petition for injunction shall be dismissed unless the court finds the petitioner has shown by clear and convincing evidence that the annexation would adversely affect the legal rights or interests of the petitioner, and that:
 (1) There was error in the proceedings before the board of county commissioners pursuant to [R.C.] 709.032 or 709.033, or that the board's decision was unreasonable or unlawful; or
 (2) There was error in the findings of the board of county commissioners.
 "A petitioner seeking to enjoin a proposed annexation bears the heavy burden of satisfying the requirements of R.C. 709.07(D)[.]" Middletown v. McGee (1988), 39 Ohio St.3d 284, 285. To avoid dismissal of their petition for an injunction, appellants "must clearly and convincingly prove that the annexation would adversely affect their legal rights or interests, and that either there was prejudicial error in the proceedings or findings of the board, [or] the board's decision was unreasonable or unlawful * * *." Id. at 285-286. (Emphasis sic.)
Before we turn to appellants' assignment of error, we wish to make clear that the standard of review in R.C. 709.07 proceedings distinctly differs from that utilized in R.C. Chapter 2506 proceedings. While an R.C. 2506.01 appeal is the proper remedy for a party aggrieved by the denial of an annexation petition, an R.C. 709.07 action is the exclusive remedy for persons challenging the approval of an annexation petition. In re Petition to Annex320 Acres to the Village of S. Lebanon (1992), 64 Ohio St.3d 585, paragraph one of the syllabus. "R.C. 709.07 places an increased burden upon the party bringing the action to prove that the board of county commissioners erred in its determination. * * * This standard of review is highly deferential to the board of county commissioners. [By contrast], when a party brings a Section 2506 appeal[,] a virtual de novo examination of the record is conducted by the court pursuant to R.C. 2506.04" Id. at 594.
Appellants generally argue that the trial court erred in holding that the annexation territory was not unreasonably large. The test for determining whether a territory is "unreasonably large" for annexation purposes is set forth in In re Annexation of1,544.61 Acres (1984), 14 Ohio App.3d 231, which established the following three-pronged analysis:
 (1) the geographic character, shape and size (acreage) of the territory to be annexed in relation to the territory to which it will be annexed (the city), and in relation to the territory remaining after the annexation is completed (the remaining Township area); * * *
 (2) the ability of the annexing city to provide the necessary municipal services to the added territory[;] [and]
 (3) the effect on the remaining township territory if annexation is permitted. If the territory sought to be annexed is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting itself, then the Board might reasonably conclude the proposed annexation is unreasonably large, although such annexation would benefit the territory sought to be annexed.
 Id. at 233.
The foregoing test first requires us to consider the geographic character, shape, and size of the annexation territory as it relates to both Mason and the Township. The annexation territory in this case is comprised of approximately one hundred one acres which contiguously border Mason for three hundred sixty-six feet. The annexation territory consists of ninety-six acres of vacant land owned by the Board of Education, a five-acre residential property, and a 0.251 acre portion of Mason-Montgomery Road. It is located within a four hundred-acre island of Township territory, separated from the main body of the Township. The "island" is surrounded on three of its sides by Mason, and borders Turtlecreek Township on its fourth side.
Mason encompasses approximately eighteen square miles of land and has a population of seventeen thousand five hundred residents. The Township encompasses approximately nineteen square miles of land and has a population of twenty thousand residents. The annexation territory constitutes less than 0.8% of the size of the Township and less than 0.8% of the size of Mason. Thus, it cannot be said that the annexation territory is too large to be annexed to Mason. Nor is it too large in comparison to the Township.
Appellants contend, however, that the annexation territory is oddly shaped in that it contiguously borders Mason for only three hundred sixty-six feet and creates a peninsula of Township property west of the annexation territory. The annexation territory can be best described as resembling a tall water pitcher whose handle is solid and the size of a third of the body of the pitcher.
It is well-established that a primary requirement for annexation is that the territory must be contiguous, adjacent, or adjoining to the municipality. See R.C. 709.02; Watson v.Doolittle (1967), 10 Ohio App.2d 143, 146-147. Although some touching between the municipality and the territory to be annexed is required, "the law is unsettled as to what degree of touching is needed to fulfill the contiguity requirement." McGee,39 Ohio St.3d at 287. Ohio courts "have frowned upon the use of connecting strips of land to meet the contiguity requirement when annexing outlying territory not otherwise connected to the annexing municipality. Such annexations are usually referred to as `strip, shoestring, subterfuge, corridor, and gerrymander annexations'. * * * In determining whether a proposed annexation satisfies the contiguity requirement, * * * the basic concept of a municipality is that of a unified body * * *." Id.
"The percentage of feet out of the total amount of linear feet that actually touches a territory is * * * not the test to determine whether a property is contiguous [enough] to a municipality." Inre Petition for Annexation of 75.14 Acres (Sept. 16, 1996), Clermont App. No. CA96-02-013, unreported, at 7. The annexation territory in this case is not disproportionally shaped. The map of the annexation territory clearly shows that the portion of the territory that actually touches the corporation line of Mason is neither a shoestring nor a corridor. Nor does the annexation territory have a "balloon-on-a-string" configuration.
With regard to the creation of the peninsula, we note that even when completely isolated islands of land are created by annexation, their existence alone is not sufficient to reject an annexation petition as long as the decision to create them was not unreasonable, illogical, or arbitrary. See Dabkowski v. Baumann
(1963), 175 Ohio St. 89. We reach the same conclusion for a peninsula created by annexation in the territory remaining after annexation. There is no evidence in the record to suggest that the creation of the peninsula was arbitrary or unreasonable. Moreover, while the peninsula would be surrounded on three sides by Mason after annexation, it remains open to the remaining Township island on its south side.
In light of the foregoing facts, we agree with the trial court that appellants simply have not shown by clear and convincing evidence that the annexation territory is unreasonably large under the first factor for purposes of R.C. 709.033. We therefore conclude that the geographic character, size, and shape of the land at issue in this case favor annexation. See Deerfield Twp.Bd. of Trustees v. Baysore (May 12, 1997), Warren App. No. CA96-09-091, unreported.
The next factor we must consider is Mason's ability to provide essential services to the annexation territory. Our focus in considering this factor is whether the services Mason could provide are adequate, not whether they are better than those currently provided by the Township. Id. at 9. Nor is the test whether the services the Township currently provides are better than the services Mason would provide. The record contains affidavits from several Mason city officials which collectively demonstrate that Mason is able to provide adequate police, fire, road maintenance, and emergency medical services to the annexation territory.
Much ado was made about Mason's lack of facility to provide water and sewer services to the annexation territory at the time of the hearing before the Board and the hearing before the trial court. The record shows that the Township similarly lacked the facility then to provide water and sewer services to the annexation territory. There is, however, evidence in the record which indicates that Mason could and would provide both water and sewer service to the annexation territory. Therefore, neither the Board nor the trial court erred in concluding that the annexation territory was not so unreasonably large as to preclude Mason from providing essential services under these circumstances.
Lastly, we must consider the effect of the annexation on the remaining Township territory. Appellants contend that the annexation is unreasonably large because it will (1) have a negative impact on the Township's tax base, and (2) severely hamper the Township's ability to provide water and sewer services to the Township territory remaining in the "island" after annexation.
Under this last factor, we must consider whether the annexation territory is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting itself. "An annexation is not unreasonably large for purposes of R.C. 709.033 where the reduction in township tax revenue caused by the annexation does not render the township incapable of supporting itself." Baysore, Warren App. No. CA96-09-091, unreported, at 11. "Clearly, most townships will have fewer available financial resources after an annexation, however, those townships are no longer responsible for servicing the annexation territory. Additionally, the legislature addressed this issue by adopting the tax sharing provisions of R.C. 709.19."Franklin Twp. Bd. of Trustees v. Cristo (Mar. 28, 1994), Butler App. No. CA93-10-198, unreported, at 11.
In the case at bar, there is no evidence that the loss of tax base is so staggering that it threatens the nineteen square mile Township's ability to continue functioning as a viable entity. Appellants have therefore not established by clear and convincing evidence that the annexation territory is so large as to render the remaining Township incapable of supporting itself.
With regard to the Township's ability to provide water and sewer services to the remaining Township territory in the "island," the trial court found that "the legal rights of the Township [might] be adversely affected by the annexation because the Township now has a contractual obligation to provide water service to certain areas of the township and, in order to do so, the Township will have to apply to the City of Mason for permits to install the necesaary [sic] water lines if this annexation is accepted." (Emphasis added.)
Appellants contend that upon annexation, "it will be impractical for the township to provide water services to th[e] [remaining township area in the island] and include a fire station and a park. Rather, the township may have to use this property for residential developments to have more customers for its water and sewer services. * * * [T]he township's plan to build a park will likely be unfeasible. Further, it is doubtful that the township will be able to provide water services to the surrounding properties in this area."
"[T]he burden of clear and convincing proof cannot be satisfied by mere conjecture or speculation." McGee, 39 Ohio St.3d at 286. We find that appellants' foregoing contentions are speculative and therefore do not meet the standard of clear and convincing evidence. In addition, we believe that the Township's alleged future inability to provide water and sewer services to the remaining Township area in the "island" existed even before the annexation petition inasmuch as the annexation territory is located within an island of Township territory separated from the main body of the Township. In light of the foregoing, we find that the effect of the annexation on the remaining Township territory is not so great in this case as to render the annexation territory unreasonably large.
Having carefully considered each of the three factors set forth in In re Annexation of 1,544.61 Acres, we are satisfied that appellants have not shown by clear and convincing evidence that the annexation territory is unreasonably large. As a result, the trial court properly denied appellants' petition for an injunction. Appellants' sole assignment of error is overruled.
 _______________ WALSH, J.
POWELL, P.J., and VALEN, J., concur.