This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Randy Hart ("Petitioner"), agent for the annexation petitioners, appeals from the judgment of the Summit County Court of Common Pleas which affirmed the Summit County Council's ("Council") denial of a petition for annexation to the City of Barberton ("City"). This Court affirms and reaches the same result, but for different reasons than those stated by the trial court.
Petitioner filed a petition for annexation of 222.71 acres of land ("territory") in Franklin Township ("Township") to the City. The Council held a public hearing to consider the petition, where it received testimony and evidence from some of the territory landowners, as well as various City and Township officials. Subsequently, the Council passed Resolution 2000-491, which denied the petition for annexation of the territory. Petitioner appealed the Council's decision to the Summit County Court of Common Pleas pursuant to R.C. Chapter 2506. The trial court affirmed the Council's decision. Petitioner appeals asserting three assignments of error for review.
 ASSIGNMENT OF ERROR I The trial court erroneously upheld the [Council's] denial of annexation as being "unreasonably large," where said conclusion had no factual basis, and where the annexation territory is not unreasonably large.
In his first assignment of error, Petitioner argues that the trial court erred in affirming the denial of the annexation petition based on a finding that the territory was "unreasonably large." We agree.
An order affirming or denying a petition for annexation may be appealed to the Common Pleas Court pursuant to R.C. 2506.01. The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of the evidence. R.C. 2506.04. This judgment may then be appealed to the Court of Appeals, by any party, on questions of law as provided by the Rules of Appellate Procedure. Id. "An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires this court to affirm the common pleas court, unless [we] find, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." Smith v.Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 613.
R.C. 709.033 provides that after a hearing on a petition to annex, the Board of County Commissioners shall enter an order allowing the annexation if it finds that the territory included in the annexation petition (A) is not unreasonably large, (B) the map or plat is accurate, and (C) the general good of the territory sought to be annexed will be served if the petition is granted. R.C. 709.033(E).
In determining whether an area to be annexed is unreasonably large, a council should consider: (1) the geographic character, shape, and size of the territory to be annexed in relation to the territory to which it will be annexed, and in relation to the territory remaining after the annexation is completed; (2) the ability of the annexing city to provide the necessary municipal services to the added territory; and (3) the effect on remaining township territory if annexation is permitted. In reAnnexation of 1,544.61 Acres (1984), 14 Ohio App.3d 231, 233.
 A. Geographic Character
The first factor of the test requires us to consider the geographic character, shape, and size of the territory as it relates to both the City and the Township. See id. Traditionally, Ohio courts have found that even when completely isolated islands of land are created by annexation, their existence alone is not sufficient to reject an annexation petition, so long as the decision to create them was not unreasonable, illogical, or arbitrary. See In re Appeal of Jefferson Twp. Bd. ofTrustees (1992), 78 Ohio App.3d 493. The same conclusion applies to a peninsula created by an annexation. See, e.g., In re Petition to Annex101.763 Acres (June 26, 2000), Warren App. No. CA99-11-129, unreported, 2000 Ohio App. LEXIS 2758, at *10-11; Trissell v. Bethel Twp. Bd. ofTrustees (Dec. 12, 1997), Miami App. No. 97-CA-35, unreported, 1997 Ohio App. LEXIS 5499, at *8.
The territory in this case is comprised of 222.71 acres. It creates a peninsula with approximately 34 sides, one of which continuously borders on the City boundary for approximately 1,600 feet. According to evidence presented at the hearing, approval of the annexation would decrease the size of the Township by 1.42% and would increase the size of the City by 4.13%.
With regard to this factor, the Council noted that the territory formed a large peninsula and found that "[t]he territory sought to be annexed is unreasonably large." It denied the petition on this basis, in part. The trial court found evidence to support this conclusion, stating that there was no dispute that the territory was irregularly shaped.
The territory's shape apparently resulted from the Petitioner's attempt to accommodate certain property owners who did not want to join the annexation. There is nothing in the record to suggest that the decision to draw the annexation lines to exclude certain property was unreasonable, illegal, or arbitrary. See Finkelman v. Franklin Twp.Trustees (Dec. 12, 1994), Warren App. No. CA94-06-051, unreported, 1994 Ohio App. LEXIS 5567, at *9 (finding that the creation of an island is not unreasonable, illogical, or arbitrary where the creation existed in order to exclude property owners who did not wish to be included in the annexation.) Furthermore, although size alone is not conclusive, we find the percentage of change in the area of the City and the Township, as a result of the proposed annexation, is not unreasonably large as a matter of law. See Jefferson Twp. Bd. of Trustees (1992), 78 Ohio App.3d at 499
(finding that a five percent decrease in township property is not unreasonably large); Golonka v. Bethel Twp. Bd. of Trustees (Dec. 8, 2000), Miami App. No. 2000-CA-33, unreported, 2000 Ohio App. LEXIS 5766, at *6-7 (finding that 3.1% decrease in township property and 5.1% increase in city property is not unreasonably large as a matter of law).
Accordingly, we conclude that the geographic character, size, and shape of the territory favor annexation.
 B. City's Ability to Provide Services
The next factor we must consider in order to determine if the territory is unreasonably large is the City's ability to provide necessary services to the territory. See In re Annexation of 1,544.61 Acres,14 Ohio App.3d at 233. Our focus in considering this factor is whether the services the City could provide are adequate and not whether they are better than those currently provided by the Township. See Deerfield Twp. Bd. ofTrustees v. Baysore (May 12, 1997), Warren App. No. CA96-09-091, unreported, 1997 Ohio App. LEXIS 1989, at *11; In re Petition forAnnexation of 131.983 Acres (July 7, 1995), Miami App. No. 94-CA-15, unreported, 1995 Ohio App. LEXIS 2984, at *38; In re Annexation of369.781 Acres of Land (Aug. 5, 1991), Stark App. No. CA-8446, unreported, 1991 Ohio App. LEXIS 3787, at *26-27. When analyzing this prong of the test, a city council can consider problems arising from the overlap of services that were not adequately addressed by the petitioners. Annexation of 131.983 Acres, supra, at *38.
 In other words, if annexation would cause widespread confusion over who is supposed to deliver services, and those potential problems are documented (and are not addressed by the parties who wish to annex), a board or court could find that the municipality cannot provide needed services. We do note that this would probably be true only in unusual situations.
Golonka, supra, at *12.
The Council found that "[t]here is substantial, reliable and probative evidence in the record that the annexation will result in confusion of service providers, such as fire, EMS and road services, as to which political subdivision will be responsible for the area to be annexed, due to the creation of a peninsula." Upon review, the trial court observed that the City had presented evidence of its ability to provide adequate services. However, it went on to find that the Petitioner had "failed to provide evidence that the City * * * could improve the services currently offered by the Township."
In the instant case the record indicates that prior to the public hearing, the City adopted Resolution 36-2000, pursuant to the requirements of R.C. 709.031(B). The resolution provides that, upon annexation:
 (1) The City will allow the property owners to tap into existing water and sanitary sewer lines if any currently exist. Water and/or sanitary sewer lines will be extended to parts of the territory not currently served upon the request of the property owners and at the shared expense of both the property owners and the City in proportionate amounts to be determined at the time of the extension of such lines.
 (2) The City will provide street maintenance and snow removal for the streets which lie within the area to be annexed.
 (3) The City will provide police and fire protection to the area.
 (4) The services of the City Health Department will be available to the owners and residents of this territory.
 (5) City garbage and trash pickup will be available to this territory.
 (6) All other services provided to residents of the City will be made available to the annexed territory.
There is no evidence indicating that the City would be unable to provide these services to the territory. While the testimony of the various Township officials and one of the territory landowners maintains that the Township's services are equal or better than those of the City, a comparison of services is not the appropriate test. See Golonka, supra, at *11.
With regard to the Council's finding that the annexation would result in the confusion of services, we note that the record did not contain any documented potential problems of "widespread confusion over who is supposed to deliver services." See Golonka, supra, at *12. To the contrary, the resolution and testimony revealed that the City has the ability to provide necessary municipal services to the territory and there was no evidence indicating otherwise. Therefore, we conclude that the City's ability to provide necessary services to the territory favors annexation.
 C. Effect on the Township
The final factor we must consider is the effect of the annexation on the remaining Township territory. See In re Annexation of 1,544.61Acres, 14 Ohio App.3d at 233. In evaluating this effect, tax revenue is the factor typically considered. In In re Annexation of 1,544.61 Acres, the court explained that:
 [i]f the territory sought to be annexed is so great a portion of the township's tax base that the annexation would render the remaining township incapable of supporting itself, then the [Council] might reasonably conclude the proposed annexation is unreasonably large, although such annexation would benefit the territory sought to be annexed.
Id. at 233, quoting Herrick v. Bd. of County Commrs. (Jan. 23, 1980), Summit App. No. 9425, unreported, at 6. "Clearly, most townships will have fewer available financial resources after an annexation, however, those townships are no longer responsible for servicing the annexation territory. Additionally, the legislature addressed this issue by adopting the tax sharing provisions of R.C. 709.19." Franklin Twp. Bd. of Trusteesv. Cristo (Mar. 28, 1994), Butler App. No. CA93-10-198, unreported, 1994 Ohio App. LEXIS 1368, at *13-14.
The Council found that "there will be a loss of tax base to Franklin Township if this proposed annexation is granted." The trial court did not address this specific finding, but affirmed the Council's decision that the territory was unreasonably large.
The record indicates that the potential tax loss to the Township would be $7,054.77. However, there is no evidence in the record that specifies the Township's annual tax revenue or by what percentage its revenue would be reduced by the proposed annexation. Therefore, based on the record we cannot say that this potential reduction in Township tax revenue is so staggering that it threatens the Township's ability to continue functioning as a viable entity. Accordingly, we conclude that the effect of the annexation on the remaining Township territory favors annexation.
Having carefully considered each of the three factors set forth in Inre Annexation of 1,544.61 Acres, we hold that the trial court's finding that the annexation territory was unreasonably large was not supported by a preponderance of reliable, probative, and substantial evidence. Petitioner's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II The trial court erroneously upheld the [Council's] denial of annexation to the extent it was based on an inaccurate statement of the number [of] owners of the annexation territory, or to the extent it is based on an allegedly different map, where such denial had no substantial factual or legal basis.
In his second assignment of error, Petitioner argues that the trial court erred in upholding the Council's denial of the annexation petition on the grounds that the petition and map were inaccurate. We disagree.
R.C. 709.02 addresses the petition requirements for an application for annexation by owners of real estate adjacent to the municipality, the situation in this case. It states in relevant part:
 Application for such annexation shall be by petition, addressed to the board of county commissioners of the county in which the territory is located, and signed by a majority of the owners of real estate in such territory. Such petition shall contain:
 (A) A full description and accurate map or plat of the territory sought to be annexed;
 (B) A statement of the number of owners of real estate in the territory sought to be annexed;
 (C) The name of a person or persons to act as agent for the petitioners.
Further, R.C. 709.033 states the findings necessary in order for the Council to order an annexation. It states:
 After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:
 (A) The petition contains all matter required in section 709.02 of the Revised Code.
 (B) Notice has been published as required by section 709.031 [709.03.1] of the Revised Code.
 (C) The persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed.
 (D) The municipal corporation to which the territory is proposed to be annexed has complied with division (B) of section 709.031 [709.03.1] of the Revised Code.
 (E) The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted.
The Council found that the annexation petition contained errors which Petitioner had failed to move to amend. The alleged errors included a change in the map and an inaccurate statement of the total number of landowners in the territory. The Council denied the petition based on the errors, along with its finding that the territory was unreasonably large. The trial court affirmed the council's decision and held that the Council's denial based on the petition errors was supported by substantial, reliable, and probative evidence.
 A. Map
Pursuant to R.C. 709.033(A), which refers to R.C. 709.02(A), and R.C.709.033(E), a full description and an accurate map or plat is a prerequisite to the Council's approval of the annexation. The purpose of the map requirement is to permit the commissioners and any interested parties to determine the exact geographic location and size of the area to be annexed. Falls Twp. Bd. of Trustees v. Hiscock (Jan. 23, 1991), Muskingum App. No. CA90-34, unreported, 1991 Ohio App. LEXIS 396, at *9.
The change at issue is a slight adjustment that was made to the territory's legal description and plat, subsequent to the filing of the petition with the Council and prior to the public hearing. An affidavit submitted by the Engineering Technician for the City stated that adjustments were made per the request of the County Engineer in order to correct the following discrepancies:
 (a) Legal description does not mathematically close by 0.2'.
(b) The plat does not mathematically close by 0.04'.
 (c) The distance of 802.31' on the plat differs from the legal description distance of 802.13'.
The trial court found that the change in the map or plat was not substantial. We agree and find that under these specific facts there was no prejudice as a result of the adjustment. There was sufficient identification of the territory in the petition to ascertain the geographic location and size of the area to be annexed. Therefore, the completeness and accuracy cannot be questioned even though some of the particulars may be false. In re Annexation of 109.528 Acres (Aug. 31, 1983), Stark App. No. CA-6206, unreported, 1983 Ohio App. LEXIS 13425, at *8, citing Chadwell v. Cain (1959), 169 Ohio St. 425.
 B. Number of Landowners
Pursuant to R.C. 709.033(A) which refers to R.C. 709.02(B), a petition must contain a statement of the number of owners of real estate in the territory sought to be annexed, in order for the Council to approve the annexation. In this case, the record indicates that the annexation petition included the requisite statement of the number of landowners in the territory; however, it inaccurately stated that the number of landowners totaled 53. In fact, it is undisputed that there were actually 40 landowners in the territory. Twenty-three of the landowners signed the petition.
The trial court concluded that "[t]he errors relative to the number of landowners cannot be discounted." In support of this conclusion, the trial court noted the Township's argument that the published legal notice required by R.C. 709.033(B) was inaccurate. Specifically, the Township's contention was that due to the incorrect statement of the number of territory landowners, contrary to R.C. 709.033(A) and R.C. 709.02(B), the published notice erroneously reflected that a majority of signatures had not been obtained in support of the petition. The trial court further noted that this may have discouraged more landowners from appearing at the hearing to voice their objections to the petition.
Upon review of Petitioner's assignment of error and the trial court's decision, it is clear that a review of this argument hinges upon an evaluation of the accuracy of the published legal notice. In accordance with App.R. 9(B), it is the duty of the party appealing to ensure that the record, or whatever portions thereof are necessary for the determination of an appeal, are filed with the court in which he seeks review. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19. See, also, Loc.R. 5(A). In absence of those portions of the record necessary for the resolution of assigned errors, "the reviewing court has nothing to pass upon and * * * has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199.
The published legal notice at issue is not part of the record on appeal. In its absence we must presume the validity of the lower court's proceedings. Therefore, we cannot say that Petitioner's failure to amend the statement of the number of territory landowners did not prejudice the Township. Accordingly, the trial court's decision that the inaccuracies in the annexation petition provided a basis upon which to deny the petition is supported by a preponderance of reliable, probative, and substantial evidence. Consequently, the petition did not comply with the prerequisite for annexation contained in R.C. 709.033(A). Petitioner's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III The trial court erroneously failed to determine that annexation would serve the general good of the annexation territory.
In his final assignment of error, Petitioner maintains that the trial court erred when it failed to make a determination as to whether the general good of the territory would be served if the annexation petition was granted. We disagree.
The plain language of R.C. 709.033 provides that, before an annexation petition may be granted, all of the prescribed findings must be made. If any of the statutory prerequisites are resolved adversely to the annexation, it cannot be granted.
The Council found that the territory was unreasonably large and that the map or plat was inaccurate. When the common pleas court affirmed that decision, based on the appropriate standard of review, the case was, for all practical purposes, resolved. This court previously addressed this issue and found that a common pleas court "is required to meet only that issue or those issues which are necessary in order to resolve the case."In re Annexation of 1,544.61 Acres, 14 Ohio App.3d at 235. Therefore, we find that it was not error for the trial court not to determine whether the annexation would serve the general good of the territory. Accordingly, Petitioner's third assignment of error is overruled.
In sum, "we will not reverse a correct judgment merely because of an erroneous rationale." State ex rel. Gilmore v. Mitchell (1999),86 Ohio St.3d 302, 303. While we overrule the trial court's holding that the territory is unreasonably large, we sustain its finding that the petition errors are adverse to allowing annexation. Therefore, in light of the conclusion that all of the prescribed findings for annexation pursuant to R.C. 709.033 were not met, we affirm the trial court's denial of the annexation petition.
Petitioner's first assignment of error is sustained. Petitioner's second and third assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ________________________________ LYNN C. SLABY
BAIRD, P.J., WHITMORE, J. CONCUR.